UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

ROBERT BOTTONE

                Plaintiff,

-against-

DAVID ROCHE, SIVIN, MILLER & ROCHE LLP,
ALEXIS EL SAYED, ART BAR, ERICA HALVERSON,
MITCHELL CUNHA, MACKENZIE STONE, ALEXANDRA
KRAVITZ, AND DEVIN HORNE

                Defendants,

-----------------------------------------------------x

**VERIFIED
COMPLAINT**

**JURY TRIAL
DEMMANDED**

22 CV 10349

    The nature of this action is one that seeks damages resulting from the tortious conduct of the above named Defendants.

    The sources for all claims and assertions contained herein derive from conversations with witnesses, information gathered by trained investigators, case law, statutory authority, and all annexed exhibits.

    Plaintiff, as and for its verified complaint alleges as follows:

### JURISDICTION AND VENUE

1.    This court has jurisdiction over the subject matter and all parties pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between the Plaintiff and all named Defendants and the amount in question exceeds $75,000.

2.     Pursuant to 28 U.S.C. § 1367, this court maintains jurisdiction over related state law claims as all claims derive from the same set of operative facts that they are so intertwined and cannot be reasonably separated.

3.     Venue is proper in, and Defendants are subject to the personal jurisdiction of this Court because Defendants either reside in or operate a business in this District and/or all or most of the events giving rise to this action occurred in this District. 28 U.S.C. §1391.

<u>FACTS</u>

4.     From August 2021 to mid-December 2021, Robert Bottone ("Plaintiff") and Alexandra Kravitz ("Kravitz") maintained an intimate relationship as legally defined by the Family Court Act of the State of New York.

5.     During this relationship, Kravitz was prone to jealously and would experience frequent panic attacks. At varying times, she spoke to the Plaintiff of her desire to "quit her job and check herself in someplace" presumably to a facility that could assist her with mental health challenges she was facing.

6.     Kravitz's parents, Laura Kravitz and Dr. Thomas Kravitz of New Mexico would frequently pay for older male companions to move in with their daughter at her behest beginning when she was in high school and under the age of 18.

7.     Kravitz has called the police multiple times on other boyfriends prior to her relationship with the Plaintiff and has sought related legal action against them.

8.     On December 1, 2021, Kravitz waited until the Plaintiff had fallen asleep and then took his cellular device without his permission and went through it. Kravitz found what

she believed to be evidence that the Plaintiff was seeing other women. Kravitz

subsequently flew into a jealous rage.

9.    On December 3, 2021, the Plaintiff's sister Michelle contacted Kravitz to inform

her that nearly half of the clothes that her brother owned were still at Kravitz's apartment

located at 284 East 10th Street.  She asked if she could meet with Kravitz to secure the

return of these items. Kravitz seemed amenable to this, but then inexplicably reneged on

this commitment.

10.   On December 9, 2021, the Plaintiff went to Kravitz's apartment building in an

attempt to try to make amends and to secure the return of his belongings in a timely

manner.

11.   At the time, the Plaintiff was taking his law school finals, a highly stressful time of

year, as well as battling mental health and alcohol issues. The Plaintiff enlisted the help

of friends and as many people as he could to try to mediate and resolve the issues

surrounding the return of his clothes and other belongings.

12.   While waiting in the hallway of Kravitz's building on the above-mentioned date,

the Plaintiff was admittedly impatient and stubborn. For this past behavior, he feels

remorse.

13.   Yet Kravitz, who has extensive training in mixed martial arts came out of her

apartment unit and into the hallway and began to strike the Plaintiff on the chest. During

the course of this event, Kravitz had her phone in one hand which she struck the Plaintiff

on the side of the chest with. The Plaintiff attempted to defend himself by taking

Kravitz's phone from her hand and grabbing onto Kravitz's wrist to stop her from hitting

him and to calm her down. Once the situation had de-escalated, the Plaintiff returned

Kravitz's phone to her.

14.    On December 11, 2021, Kravitz sent the Plaintiff an incendiary text message,

implying that she would not return the Plaintiff's remaining items to him. This message

was sent at the urging of and behest of Kravitz's friend Devin Horne ("Horne"), who has

a documented history of mental illness and self-harm.

15.    Following receipt of this text message, the Plaintiff allowed his frustration to get

the best of him and he, along with his sister, sent a series of text messages to Kravitz that

insulted her appearance and downplayed any feelings he had for her during the

relationship.

16.    On December 12, 2021, Kravitz, at the urging of Horne, filed a criminal complaint

against the Plaintiff based on these text messages.

17.    On December 13, 2021, Kravitz sought an ex parte Temporary Order of Protection

against the Plaintiff from the New York County Family Court. This was once again done

at the urging of and under the counsel of Horne.

18.    From December 13, 2021 onward, Kravitz received advice on her criminal

complaint against the Plaintiff from Detective Michael Franco, Shield #7551. Detective

Michael Franco is known for sanctioning the handcuffing of a woman who was 40 weeks

pregnant and then refusing to provide her medical care once she went into labor.

19.    Detective Franco was sued for his cruel, inhumane treatment of a pregnant woman

and judgment was issued against him. See, Jane Doe, on her own behalf and on behalf of

her minor son, Baby Doe vs. Detective Michael Franco, NYPD et al. No. 20 Civ. 1344.

20.   From December 13, 2021 to January 4, 2022, the Plaintiff was not served with and therefore unaware of the existence of any Order of Protection. During this time, further text messages were sent to Kravitz aiming to secure the return of the Plaintiff's remaining belongings that Kravitz was withholding. The tone of these text messages were clipped and alluded to the prospect of civil litigation.

21.   On January 4, 2022, the Plaintiff filed suit against Kravitz in the New York City Civil Court.

22.   On or about January 18, 2022, Kravitz retained the counsel of Sivin, Miller & Roche, LLP for representation on both her Family Court Case and Civil Case.

23.   Upon information and belief, recognizing that these cases were not of the typical subject matter that Sivin, Miller & Roche LLP normally undertakes, as it would not provide the firm with an opportunity to procure tax-payer money in a settlement with the City of New York or the NYPD, Edward Sivin passed off Kravitz's case to David Roche ("Roche"), the lowest ranking partner at the firm.

24.   Upon his first appearance as Kravitz's counsel, Roche came across as belligerent, with the Plaintiff's counsel in Family Court privately complaining of how difficult Roche was to work with on settlement negotiations.

25.   On or about January 28, 2022, duly authorized subpoenas were issued in a civil case to two contacts of Kravitz, Mackenzie Stone ("Stone") and Erica Halverson ("Halverson").

26.   While Stone willfully avoided service from the New York City Sheriffs, Halverson was served by the New York City Sheriffs on February 4, 2022.

27.   From approximately the last week of January through mid-February, 2022, Kravitz was spotted by the Plaintiff and another contact following the Plaintiff in and around public places.

28.   On February 11, 2022, the Plaintiff went to Art Bar, an establishment located in the West Village neighborhood to unwind.

29.   At Art Bar, the Plaintiff spotted Halverson. A drink was then sent over to Halverson through a bartender, Alexis El Sayed ("El Sayed"), in which El Sayed verbally recited the message, "obey the subpoena."

30.   It later became evident that Halverson was with a group of people that included Kravitz and Mitchell Cunha ("Cunha").

31.   Kravitz, her legal representatives, and associates have continued to falsely claim that this drink at Art Bar was for Kravitz despite the fact that there was not a subpoena issued to Kravitz at the time, nor has any subpoena ever been issued to Kravitz to date.

32.   As Halverson was the only individual at Art Bar who had been issued an active subpoena, any reasonable person would conclude that this drink was for Halverson.

33.   Alexis El Sayed has never stated, either under oath or otherwise, that this drink was for Kravitz.

34.   Alexis El Sayed ejected the Plaintiff, a Hispanic male, from Art Bar despite the fact that he was lawfully in a public place.

35.   Following Halverson receiving this drink, Kravitz called the 911 emergency line twice.

36.    During such calls, Kravitz falsely claimed that a separate fictitious dark-skinned Hispanic male was at the bar with the Plaintiff harassing her and her friends as a racist dog whistle to get the Police's attention.

37.    Upon information and belief, El Sayed compelled Kravitz to dial the 911 emergency line twice and aided Kravitz in her false assertion of a dangerous dark-skinned Hispanic male.

38.    Upon information and belief, Halverson compelled Kravitz to dial the 911 emergency line twice and aided Kravitz in her false assertion of a dangerous dark-skinned Hispanic male.

39.    Upon information and belief, Cunha compelled Kravitz to dial the 911 emergency line twice and aided Kravitz in her false assertion of a dangerous dark-skinned Hispanic male.

40.    El Sayed threatened the Plaintiff with violence through another Art Bar employee known as "Bruce" who's full identity is unknown.

41.    On February 14, 2022, an Order of Protection was issued in favor of the Plaintiff against Kravitz by the New York County Family Court on the basis of stalking and assault.

42.    On or about February 15, 2022, Roche filed a series of counter-claims in Civil Court on Kravtiz's behalf.

43.    Roche's second counter-claim for "harassment" was baseless as it is not and never has been a valid cause of action in the State of New York. Roche's counter-claim was dismissed accordingly by Hon. Emily Morales-Minerva.

44.    On March 3, 2022, a settlement conference was held in Family Court arbitrated by Court attorney Allison Flood.

45.    During this conference, Roche acted belligerently falsely asserting that the Plaintiff's family offense petition was "frivolous" despite the allegations in said petition being supported by eyewitness accounts. Annexed Exhibit B.

46.    Flood reprimanded Roche for his behavior, stating in substance to quote, "Counselor, this is really inappropriate."

47.    Following this conference, a settlement deadline was set for March 30, 2022.

48.    On and or about March 9, 2022, a Contempt proceeding was held against Halverson as a result of her willful non-compliance with a duly authorized subpoena.

49.    On or about March 9, 2022, Roche initiated a motion to quash the subpoenas issued to Halverson and Stone and a second motion seeking a complete protective order that would bar the Plaintiff from receiving any discovery whatsoever.

50.    Both of Roche's motions were deemed to be baseless and improper. The court forced Roche to withdraw both motions on the spot on the motions' return date.

51.    On March 9, 2022, Roche spoke with the Plaintiff on the phone. During said conversation, Roche stated that he strongly advised the Plaintiff to withdraw his family offense petition, withdraw a case in civil court, and pay for all of Kravitz's legal fees and that if he did not things would get much worse for the Plaintiff regarding potential criminal charges.

52.    Roche's threat of criminal charges is both an ethical violation and unlawful conduct.

53.   The rationale for the prohibition of this conduct is to prevent the improper entanglement of the Civil and Criminal Processes, ensuring that individuals are not afraid to assert their rights as litigants in fear of retribution or harsher treatment from District Attorney Offices, and thus maintaining the public confidence that these processes are indeed independent.

54.   On March 30, 2022, the Plaintiff rejected Roche's settlement demands and stated his intent to continue to prosecute his family offense petition against Kravitz.

55.   On April 18, 2022, the Plaintiff was issued an NA indictment in a one-sided proceeding in which he was denied the opportunity to testify.

56.   On or about June 30, 2022, the Plaintiff had a conversation with Roche in which the Plaintiff ruminated out loud that, "Had [I] only done some of the things you [Roche] had [asked] for like back off the civil case, agree to a settlement in family court and pay legal fees, you guys wouldn't have had to push things regarding criminal charges." To which Roche responded verbatim:

"Yeah… right look we are where we are right now…you know I don't think digging your heels in on the civil case or the family court case, that that's advisable for you."

57.   On November 17, 2022, Kravitz personally called and attempted to contact the Plaintiff violating the order of protection against her.


### AS AND FOR FIRST COUNT AGAINST ROCHE AND SIVIN, MILLER & ROCHE LLP: ABUSE OF A LAW LICENSE


58.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

59.   At all times mentioned herein, David Roche practiced law in the State of New York and was governed by and beholden to the New York State Bar Association (NYSBA) Rules of Professional Conduct.

60.   At all times mentioned herein, Roche worked under the banner of Sivin, Miller, & Roche, LLP and as such Sivin, Miller & Roche LLP maintains vicarious liability via Respondeat Superior.

61.   At all times mentioned herein, all partners and employees working as attorneys under the banner of Sivin, Miller & Roche LLP were governed by and beholden to the NYSBA Rules of Professional Conduct.

62.   On March 9, 2022 Roche conducted a conversation with the Plaintiff witnessed by David Lundberg in which he threatened the Plaintiff with criminal charges, stating that he strongly suggested the Plaintiff withdraw a civil case, withdraw his family offense petition against Kravitz, and pay for all of Kravitz's legal fees and that if he did not, "things would get much worse for him [Plaintiff] regarding potential criminal charges." Annexed Exhibit A.

63.   The foregoing conduct is a violation of NYSBA 3.4 (e).

64.   Prohibitions on this conduct have been interpreted as banning even the mere mentioning of criminal charges when there are potential parallel civil claims arising from the same or similar conduct.

65.   The compelling public policy concern for this prohibition is clear:

66.   Threatening to file or escalate criminal charges is said to subvert the criminal process, deter litigants from asserting their legal rights in fear of retribution or harsher treatment from District Attorney offices, and diminish the public's confidence in the

independence of the criminal and civil legal processes. See generally, ABA Lawyers' Manual on Professional Conduct (1994).

67.   The aforementioned prohibition is in place regardless of the legitimacy of potential criminal charges. See generally, <u>Bianchi v. Leon</u>, 138 A.D. 215, 122 N.Y.S. 1004 (1st Dep't 1910) <u>In re Hyman</u>, 226 A.D. (1st Dep't 1929).

68.   Based on the foregoing, Roche and Sivin, Miller & Roche LLP are liable to the Plaintiff for abuse of a law license.

### AS AND FOR SECOND COUNT AGAINST DAVID ROCHE AND SIVIN, MILLER & ROCHE LLP: EXTORTION

69.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

70.   On or about January 18, 2022 onward David Roche provided legal counsel to Kravitz on two separate cases, one in Family Court and one in Civil Court.

71.   David Roche has been described by attorneys who have worked with him on prior cases (who will remain anonymous for privacy reasons) as an attorney "who can be very annoying," "act like a big baby" and be a "drama queen."

72.   While the foregoing are merely opinions and opinions can be fleeting, Roche has done nothing to quell these notions through his representation on the above cases.

73.   Throughout the course of his work on these legal matters, Roche has acted like a coward, for lack of a proper euphemism. He has engaged in bullying tactics of opposing female attorneys and falsely attempted to label varying legal matters as frivolous without providing any basis for these assertions.

74. To date, Roche has lost every single motion he has made while working on behalf of Kravitz.

75. During this time period, Roche engaged in a coordinated effort to extort legal fees and concessions from the Plaintiff.

76. At a settlement conference on March 3, 2022, a deadline for the Plaintiff and Kravitz to reach a settlement was set for March 30, 2022.

77. Notably, Roche's client [Kravitz] did not participate in any grand jury proceeding prior to the settlement deadline. Once the Plaintiff rejected the settlement demands Roche made on Kravtiz's behalf and reaffirmed his intention to continue to prosecute his family offense petition against Kravitz, suddenly Kravitz was a willing participant in a grand jury proceeding against the Plaintiff that occurred two weeks later.

78. In a subsequent conversation transpiring after charges had been issued against the Plaintiff, the Plaintiff mused about his prior conversation with Roche, stating to Roche in substance that:

79. "You [Roche] had mentioned I should withdraw my civil case, my family offense petition, and pay legal fees and that if I didn't things would get much worse for me...if I had done these things you guys wouldn't have had to push things regarding criminal charges."

80. To which Roche responded verbatim: "Right yeah... look we are where we are right now..."

81. Any subsequent prophylactic attempts to walk back these comments are belied by a clear factual narrative as well as a course of conduct on the part of Roche.

82.   The foregoing evidence as well as the timeline of when criminal charges were issued against the Plaintiff are strong circumstantial indicators that any reasonable person would conclude that the Plaintiff's unwillingness to agree to Roche's demands was inextricably linked to his client's escalation of criminal charges.

83.   Roche attempted to obtain financial benefits and concessions from the Plaintiff under the threat of criminal charges. The legal merits of such charges are irrelevant as attempting to obtain these benefits under the specter of criminal threats is unlawful regardless.

84.   Based on the foregoing, Roche and Sivin, Miller & Roche, LLP are liable to the Plaintiff for extortion.

## AS AND FOR THIRD COUNT AGAINST DAVID ROCHE AND SIVIN, MILLER & ROCHE, LLP: CONSPIRACY

85.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

86.   David Roche, while working within the scope of his employment at Sivin, Miller & Roche LLP, engaged in an agreement with one or more parties to act in manner that was unlawful and/or improper that damaged the Plaintiff.

87.   Based on the foregoing, Roche and Sivin, Miller & Roche, LLP are liable to the Plaintiff for Civil Conspiracy.

## AS AND FOR FOURTH COUNT AGAINST ROCHE AND SIVIN, MILLER & ROCHE, LLP: ABUSE OF PROCESS

88.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

89.   Roche did issue regular process for an improper purpose.

90.   These processes included a series of frivolous motions aimed at preventing the Plaintiff from accessing any discoverable evidence and motions to quash subpoenas issued to two non-parties at the time, neither of whom were his clients.

91.   Roche also issued a counter-claim for "harassment."

92.   There is clear, well-established case law that harassment is not a valid cause of action in the state of New York. This case law is easily accessible to a lay-person, let alone a seasoned attorney such as Roche.

93.   Roche has been practicing law for nearly thirty years, and therefore such a glaring mistake cannot be chalked up to mere incompetence on his part. Therefore, the only plausible explanation is one of ill intent to saddle the Plaintiff with as many allegations as possible.

94.   Roche's counter-claim for harassment was dismissed accordingly by Hon. Emily Morales-Minerva on July 5, 2022.

95.   Process further included two motions issued by Roche that contained no cognizable legal arguments, but rather were issued with malicious intent to achieve the collateral objectives of obstructing the discovery process and prejudicing the Plaintiff.

96.   The foregoing included a motion to quash subpoenas issued to Halverson and Stone. In his supporting affirmation to this motion, Roche argued in substance that

because he believed that the Plaintiff was "not a good person", the court should deem any discovery request the Plaintiff made to be illegitimate.

97.   Roche made this motion on behalf of both Halverson and Stone despite not having legal standing to do so, as neither individual was his client.

98.   Halverson nor Stone had granted Roche proper legal authority to act as their representative.

99.   Recognizing that Roche's motion to quash was baseless, Hon. Hilary Gingold forced Roche to withdraw this motion on the motion's return date of March 11, 2022.

100.   Additionally, Roche issued a motion seeking a complete protective order aimed to bar the Plaintiff from receiving any discovery whatsoever.

101.   Protective orders are typically granted in rare circumstances, usually on very specific discovery requests. It is notable that Roche sought a protective order on all discovery, including a preemptive protective order on any future discovery requests. A preemptive protective order on any and all future discovery requests is virtually unprecedented.

102.   Protective orders are typically granted when the information sought is either over-broad or burdensome. See generally, Weinstein Korn Miller 3103.05.

103.   Roche did not even attempt to argue that any discovery request made by the Plaintiff was either over-broad or burdensome, but rather Roche pivoted back to the same, "the Plaintiff is not a good person so let's not give him any discovery argument" that failed in the motion to quash.

104.    It is also well established that motions for protective orders should include a supporting affidavit of a relevant party or witness as well as supporting case law. Id. Roche's motion included neither of these.

105.    Hon. Hilary Gingold forced Roche to withdraw his motion for a protective order on March 11, 2022 without even taking the time to read his supporting affirmation.

106.    Roche's issuance of these processes was a clear perversion of the legislative intent of the CPLR.

107.    As a result of this Abuse of Process, the Plaintiff incurred special damages. These damages include but are not limited to having to divert time away from work and school commitments to respond to and make court appearances for Roche's obstructionary motions as well as suffering prejudice in his ability to defend himself against Roche's counter-claims.

108.    Based on the foregoing, Roche and Sivin, Miller & Roche, LLP are liable to the Plaintiff for Abuse of Process.


### AS AND FOR FIFTH COUNT AGAINST ROCHE AND SIVIN, MILLER & ROCHE LLP: PRIMA FACIE TORT

109.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

110.    Roche, working within the scope of his employment at Sivin, Miller, & Roche LLP intentionally engaged in an extortion effort that caused the Plaintiff to incur special damages.

111.    This extortionate conduct was unethical, malicious, and without legitimate excuse or justification.

112.    Based on the foregoing, Roche and Sivin, Miller and Roche LLP are liable to the Plaintiff under Prima Facie Tort.

### AS AND FOR SIXTH COUNT AGAINST ROCHE AND SIVIN, MILLER & ROCHE LLP: VIOLATION OF JUDICARY LAW § 487

113.    Plaintiff re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

114.    Roche, acting within the scope of his employment at Sivin, Miller & Roche LLP, engaged in unethical extortionate conduct based around deception and collusion.

115.    Based on the forgoing, David Roche and Sivin, Miller & Roche LLP are liable to the Plaintiff for a Violation of Judiciary Law § 487.

### AS AND FOR A COUNT AGAINST SIVIN, MILLER & ROCHE LLP NEGLIGENT TRAINING, HIRING, AND RETENTION

116.    Plaintiff re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

117.    The business entity of Sivin, Miller & Roche LLP failed to give Roche proper training so that he could adequately execute the demands his employment called for.

118.    At all times mentioned herein, Sivin, Miller & Roche LLP was aware that Roche did not graduate from an ABA accredited law school.

119.    Sivin, Miller & Roche LLP failed to adequately train Roche in how to conduct legal research. To date, Roche has not cited a single legal case in any court filing he has made on Kravitz's behalf.

120.    Roche failed to recognize that motions for a protective order on discovery must include supporting documents and affidavits. Id. Weinstein, Korn, Miller.

121.    On numerous occasions, Roche asserted on the record that communications between two private citizens fall under the legal scope of "privilege" and therefore are not discoverable. Roche has provided no case law or statutory authority to support the concept of communications between private citizens falling under the scope of privilege.

122.    Based on the foregoing, Sivin, Miller, & Roche LLP are liable to the Plaintiff for negligent training, hiring, and retention.


### AS AND FOR FIRST COUNT AGAINST EL SAYED AND ART BAR VIOLATION OF NEW YORK HUMAN RIGHTS STATUTES

123.    On or about February 11, 2022 Alexis El Sayed and Art Bar violated Section § 296 2 (a) of the New York Human Rights Act and New York City Human Rights Law § 8-107 (4) by discriminating against the Plaintiff on the basis of both ethnicity and sex.

121.    The statutes state in substance, "it shall be unlawful for any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation to directly or indirectly refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges thereof on the basis of ethnicity, race, or sex."

124.    Art Bar is a public accommodation as defined under these statutes and Alexis El Sayed is the manager of this public accommodation.

125.   At all times mentioned herein, El Sayed acted within the scope of her employment at Art Bar and as such Art Bar maintains vicarious liability via Respondeat Superior.

126.   On the above-named date, El Sayed, a white woman, refused service to the Plaintiff, despite the fact that the Plaintiff was lawfully in a public place and not doing anything outwardly suspicious.

127.   El Sayed acted upon an uncorroborated story from Alexandra Kravitz, a customer whom she had never met in which Kravitz stated that she "thought someone she had an order of protection against" was inside the bar.

128.   El Sayed blindly accepted Kravitz's story as true without asking Kravitz to present any proof that such order of protection even existed and if such an order did exist what the terms of the order were. Notably, orders can take multiple forms including either a stay away with proscribed distances or merely an order for a subject to refrain from undertaking certain activities.

129.   El Sayed had no credible information to confirm that any order of protection existed, was properly served, or even what the terms of such an order were.

130.   Despite not having access to this necessary information, El Sayed ejected the Plaintiff, a Hispanic male from Art Bar.

131.   El Sayed failed to take any due diligent steps to assess pertinent facts including the fact that Kravitz had been engaged in a pattern of stalking the Plaintiff for weeks prior to this date, which provided probable cause for an order of protection against Ms. Kravitz to be issued on the Plaintiff's behalf in Family Court. Annexed Exhibit B.

132.   El Sayed blindly sided with Kravitz, a white woman, and then assisted Kravitz in calling the emergency 911 line twice where Kravitz falsely asserted that a separate

fictitious, dangerous, "dark-skinned, Hispanic male" was at the bar with the Plaintiff harassing Kravitz and her friend Halverson (another white woman) as a racist dog whistle to get the police's attention.

133.  El Sayed and Art Bar did not give equal weight or due diligence to the Plaintiff in his access to this public accommodation, discriminating against the Plaintiff on the basis of both ethnicity and sex.

134.  Based on the foregoing, El Sayed and Art Bar are liable to the Plaintiff under the aforementioned statutes.

## AS AND FOR SECOND COUNT AGAINST EL SAYED AND ART BAR
## ASSAULT

135.  On or about February 11, 2022, El Sayed, within the scope of her employment at Art Bar, acted with intent to create an imminent apprehension of harmful or offensive contact against the Plaintiff.

136.  While the Plaintiff was lawfully present at Art Bar, a public accommodation as defined under New York law, El Sayed threatened the use of physical force against the Plaintiff through another employee.

137.  El Sayed later admitted to committing this assault under oath, acknowledging that she created an apprehension of an imminent battery against the Plaintiff, stating in substance in regards to the other employee whom she vicariously leveled a threat of battery through, "I called him over, he's pretty big, he [Plaintiff] didn't like that." These comments by El Sayed were offered unprompted and outside the scope of questioning.

138.  Based on the foregoing, El Sayed and Art Bar are liable to the Plaintiff for Assault.

## AS AND FOR COUNT THREE AGAINST EL SAYED AND ART BAR: AIDING AND ABETTING 42 U.S.C. § 1983: FOURTEENTH AMENDMENT

139.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

140.    On or about February 11, 2022, El Sayed, knowingly granted substantial assistance in the furtherance of a deprivation of the Plaintiff's Due Process and Equal Protection rights guaranteed under the Fourteenth Amendment.

141.    While acting within the scope of her employment, El Sayed acted to compel Kravitz to dial the 911 emergency line twice merely because Kravitz said she thought she observed the Plaintiff at the bar. El Sayed aided this effort knowing there was no probable cause for emergency police intervention as the Plaintiff was behaving lawfully, not doing anything outwardly suspicious, and in a public place.

142.    The Plaintiff was subsequently unlawfully stopped, detained, and had his Due Process and Equal Protection rights infringed upon.

143.    Based on the foregoing, El Sayed and Art Bar are liable to the Plaintiff for Aiding and Abetting a deprivation of Constitutional rights pursuant to 42 U.S.C. §1983.

## AS AND FOR A COUNT AGAINST ART BAR NEGLIGENT TRAINING, HIRING, AND RETENTION

144.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

145.    Art Bar hired and retained El Sayed as a manager of a public accommodation as defined by law without providing proper training in the pertinent Human Rights Statutes that govern public accommodations.

146.    The lack of such training was proximately contributory to damages sustained by the Plaintiff.

147.    Based on the foregoing, Art Bar is liable to the Plaintiff for negligent training, hiring, and retention.

## AS AND FOR FIRST COUNT AGAINST HALVERSON
## VIOLATION OF NEW YORK HUMAN RIGHTS STATUTES

148.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

149.    At all times mentioned herein, Halverson was a natural person as encompassed by the New York Human Rights Act § 296 (6) and New York City Human Rights Law § 8-107 (6).

150.    At all relevant times, Halverson was aware that Kravitz had been engaged in a pattern of stalking the Plaintiff that gave rise to an Order of Protection issued in Family Court against Kravitz. Annexed Exhibit B.

151.    On February 11, 2022, Halverson patronized Art Bar, a public accommodation.

152.    On the above named date, Halverson acted to compel Kravitz to dial the 911 emergency line twice.

153.    On the above named date, Halverson assisted Kravitz in falsely claiming to a 911 operator that a fictitious dark-skinned Hispanic male was with the Plaintiff  (also a

Hispanic male) harassing them at the bar, as a racist dog whistle to get the police's attention.

154.   Halverson undertook this action in tandem with El Sayed, Kravitz, and Cunha, all of whom are white.

155.   The Plaintiff was subsequently assaulted by a staff member of Art Bar and ejected from said public accommodation.

156.   Based on the foregoing, Halverson is liable to the Plaintiff under the aforementioned statutes.

<u>AS AND FOR SECOND COUNT AGAINST HALVERSON<br>AIDING AND ABETTING ABUSE OF PROCESS</u>

157.   On or about February 4, 2022 to March 11, 2022, Halverson granted substantial assistance to David Roche in issuing regular process in a civil court case in order to stymie the discovery process and prejudice the Plaintiff.

158.   On or about February 4, 2022, Halverson was served by New York City Sheriffs with a duly authorized subpoena signed by Chief Clerk Alia Razzaq of the Civil Court of New York, County of New York.

159.   Halverson then engaged in a pattern of continual non-compliance in which she offered no valid objection or even perfunctory response to this subpoena.

160.   Halverson allowed Kravitz's attorney David Roche to make a motion on her behalf to quash this subpoena despite knowing that Roche was not her attorney and lacked any legal standing to make this motion.

161.   To make this collusion even more self-evident, Halverson went on an extended vacation with Kravitz to Arizona just one week prior to when this motion was scheduled to be heard and sat next to Kravitz and Roche on the hearing date.

162.   Recognizing that this motion was frivolous, Hon. Hilary Gingold forced Roche to withdraw this motion to quash on the spot on March 11, 2022.

163.   Despite being notified that the motion to quash her subpoena was denied, Halverson continued to be remiss, offering no response or valid objection to the legality of her subpoena.

164.   Halverson's conduct enabled the issuance of process for an improper purpose, placing an undue burden and causing the Plaintiff to incur special damages by requiring him to take time away from work and school commitments to write responses and make court appearances for Roche's baseless motions.

165.   Based on the foregoing, Halverson is liable to the Plaintiff for Aiding and Abetting the Abuse of Process.

## AS AND FOR THIRD COUNT AGAINST HALVERSON
## AIDING AND ABETTING EXTORTION

166.   On or about January 28, 2022 to May 31, 2022, Halverson entered into an agreement to offer gratuitous testimony in a Family Court proceeding scheduled to occur on May 31, 2022.

167.   Halverson's agreement to participate in this proceeding was part of a larger effort to extort money from the Plaintiff in the form of demands from Kravitz's attorney David

Roche that the Plaintiff pay for all of Kravitz's legal fees or else "things would get worse" for him regarding potential criminal charges.

168.   Halverson was neither a first-hand nor even a second-hand witness to any events alleged in the Family Court proceeding and had no relevant information to offer the proceeding.

169.   At all relevant times, Halverson knew that an effort to extort legal fees and concessions from the Plaintiff was occurring.

170.   Halverson's actions granted substantial assistance to Roche's extortion effort, with Roche informing the Plaintiff that a significant amount of the legal fees demanded was attributable to "prepping" Halverson as a witness.

171.   Based on the foregoing Halverson is liable to the Plaintiff for Aiding and Abetting Extortion.

<u>AS AND FOR FOURTH COUNT AGAINST HALVERSON<br>AIDING AND ABETTING THE ABUSE OF A LAW LICENSE</u>

172.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

173.   NYSBA Rules of Professional Conduct 3.4 (e) prohibits attorneys from using the threat of or even mentioning the prospect of criminal charges as a means to attain leverage in a civil court proceeding or in settlement negotiations.

174.   At all relevant times, Halverson was aware of the effort to extort legal fees and concessions from the Plaintiff under the threat of criminal charges.

175.   Halverson's agreement to participate in this scheme by offering gratuitous testimony for the purpose of running up legal fees substantially assisted Roche in violation of NYSBA 3.4 (e).

176.   Based on the foregoing, Halverson is liable to the Plaintiff for Aiding and Abetting the abuse of a law license.

## AS AND FOR FIFTH COUNT AGAINST HALVERSON CONSPIRACY

177.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

178.   Halverson did enter into an agreement with one or more parties to act unlawfully and/or in a manner that was improper harmed the Plaintiff.

179.   Based on the foregoing Halverson is liable to the Plaintiff for Civil Conspiracy.

## AS AND FOR SIXTH COUNT AGAINST HALVERSON AIDING AND ABETTING 42 U.S.C. §1983: FOURTEENTH AMENDMENT

180.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

181.   On or about February 11, 2022 Halverson granted substantial assistance to Kravitz in an effort that effectuated an infringement on the Plaintiff's Due Process and Equal Protection rights guaranteed under the Fourteenth Amendment.

182.   On February 11, 2022 while present at Art Bar with Kravitz, Halverson acted to compel Kravitz to dial the 911 emergency line twice merely because Kravitz said she observed the Plaintiff at the bar.

183.    Halverson aided this effort knowing there was no probable cause for emergency police intervention as the Plaintiff was behaving lawfully, not doing anything outwardly suspicious, and in a public place.

184.    Halverson further assisted Kravitz in falsely proclaiming to Police that there was a fictitious, dangerous dark-skinned Hispanic male at the bar harassing them.

185.   The Plaintiff was subsequently unlawfully stopped and detained and had his due process and equal protection rights infringed upon.

186.   Based on the foregoing Halverson is liable to the Plaintiff for Aiding and Abetting a deprivation of Constitutional rights pursuant to 42 U.S.C. §1983.


## AS AND FOR FIRST COUNT AGAINST CUNHA
## VIOLATION OF NEW YORK HUMAN RIGHTS STATUTES

187.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 148-156 as if fully set forth in detail herein.

188.    Cunha did act in tandem with El Sayed, Halverson, and Kravitz to incite a discriminatory practice in a public accommodation in violation of the New York Human Rights Act § 296 (6) and New York City Human Rights Law § 8-107 (6).

189.   Based on the foregoing, Cunha is liable to the Plaintiff under the aforementioned statutes.

## AS AND FOR SECOND COUNT AGAINST CUNHA
## AIDING AND ABETTING 42 U.S.C. §1983: FOURTEENTH AMENDMENT

190.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

191.   Cunha granted substantial assistance to Kravitz in an effort that effectuated an infringement on the Plaintiff's Due Process and Equal Protection rights guaranteed under the Fourteenth Amendment.

192.   On February 11, 2022 while present at Art Bar with Kravitz, Cunha encouraged Kravitz to dial the 911 emergency line twice merely because Kravitz said she observed the Plaintiff at the bar. Cunha aided this effort knowing there was no probable cause for emergency police intervention as the Plaintiff was behaving lawfully, not doing anything outwardly suspicious, and in a public place.

193.   Cunha further assisted Kravitz in falsely proclaiming to the Police that there was a fictitious, dangerous, dark-skinned Hispanic male at the bar harassing them as a racist dog whistle to get the Police's attention.

194.   The Plaintiff was subsequently unlawfully stopped and detained and had his due process and equal protection rights infringed upon.

195.   Based on the foregoing Cunha is liable to the Plaintiff for Aiding and Abetting a deprivation of Constitutional rights pursuant to 42 U.S.C. §1983.

## AS AND FOR FIRST COUNT AGAINST STONE
## AIDING AND ABETTING EXTORTION

196.   On or about January 28, 2022 to May 31, 2022, Stone entered into an agreement with Roche and Kravitz to offer gratuitous testimony in a Family Court proceeding scheduled to occur on May 31, 2022.

197.   Stone's agreement to participate in this proceeding was part of a larger effort to extort money and concessions from the Plaintiff in the form of demands from Roche that

the Plaintiff pay for all of Kravtiz's legal fees or else things would get much worse for him regarding potential criminal charges.

198.    At all relevant times, Stone knew that an effort to extort legal fees and concessions from the Plaintiff was occurring.

199.    Stone was neither a first-hand nor a second-hand witness to any events alleged in the Family Court proceeding and had no relevant information to offer the proceeding. Her actions granted substantial assistance to Roche's extortion effort, with Roche informing the Plaintiff that a significant amount of the legal fees demanded was attributable to "prepping" Stone as a witness.

200.    Based on the foregoing, Stone is liable to the Plaintiff for Aiding and Abetting Extortion.

## AS AND FOR SECOND COUNT AGAINST STONE
## AIDING AND ABETTING THE ABUSE OF A LAW LICENSE

201.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

202.    NYSBA Rules of Professional Conduct 3.4 (e) prohibits attorneys from using the threat of or even mentioning the prospect of criminal charges as a means to attain leverage in a civil court proceeding or in settlement negotiations.

203.    At all relevant times, Stone was aware of the effort to extort legal fees and concessions from the Plaintiff under the threat of criminal charges.

204.    Stone's agreement to participate in this scheme by offering gratuitous testimony for the purpose of running up legal fees substantially assisted Roche in violation of NYSBA 3.4 (e).

205.   Based on the foregoing, Stone is liable to the Plaintiff for Aiding and Abetting the Abuse of a law license.

<u>AS AND FOR THIRD COUNT AGAINST STONE<br>CONSPIRACY</u>

206.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

207.    Stone did enter into an agreement with one or more parties to act unlawfully and/or in a manner that was improper that harmed the Plaintiff.

208.    Based on the foregoing, Stone is liable to the Plaintiff for Civil Conspiracy.

<u>AS AND FOR FOURTH COUNT AGAINST STONE<br>AIDING AND ABETTING ABUSE OF PROCESS</u>

209.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

210.    On or about January 14, 2022, Stone was issued a duly authorized subpoena signed by Chief Clerk Alia Razzaq of the Civil Court of New York, County of New York.

211.    Stone then willfully avoided service by the New York City Sheriffs.

212.    Despite not even being legally served, Stone allowed Roche to make a motion on her behalf to quash her subpoena.

213.   Stone allowed Roche to make this motion knowing Roche was not her attorney and knowing that Roche lacked any legal standing to bring this motion on her behalf.

214.   Recognizing that this motion was frivolous, Hon. Hilary Gingold forced Roche to withdraw this motion on the spot on March 11, 2022 without even taking the time to read Roche's supporting affirmation.

215.   Stone's conduct substantially assisted the issuance of process for an improper purpose, placing an undue burden on the Plaintiff and causing him to incur special damages by requiring him to take time away from work and school commitments to write responses and make court appearances for Roche's baseless motions.

216.   Based on the foregoing, Stone is liable to the Plaintiff for Aiding and Abetting Abuse of Process.


## AS AND FOR FIRST COUNT AGAINST KRAVITZ
## ASSAULT AND BATTERY

217.   Plaintiff hereby re-alleges and incorporates by reference Paragraph 13 as if fully set forth in detail herein.

218.   On or about December 9, 2021, Kravitz struck the Plaintiff multiple times in the chest and arms, including with her cellular phone.

219.   Based on the foregoing, Kravitz is liable to the Plaintiff for Assault and Battery

AS AND FOR SECOND COUNT AGAINST KRAVITZ
INVASION OF PRIVACY

220.   Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

221.   On or about December 1, 2021, Alexandra Kravitz seized the Plaintiff's private cellular electronic device, knowing she did not have license or privilege to do so.

222.   Kravitz then intercepted messages that were in transit between the Plaintiff and other individuals, and performed an unlawful search on said device.

223.   This unlawful intrusion of the Plaintiff's privacy was premeditated as Kravitz set an alarm on her phone alerting her to wake up in the early hours of the morning so that she would have an opportunity to conduct this intrusion.

224.   Kravitz's intrusion constitutes two probable crimes committed.

225.   New York Penal Law 250.05 states, "a person is guilty of eavesdropping when he or she unlawfully engages in the wiretapping, mechanical overhearing of a conversation, or the intercepting or accessing of an electronic communication."

226.   The crime of computer trespass, New York Penal Law 156.10 (2) states, "A person is guilty of computer trespass when he or she knowingly uses, causes to be used, or accesses a computer, computer service, or computer network without authorization and he or she thereby knowingly gains access to computer material."

227.   A private cellular device is considered a computer as defined under law. See generally, 18 U.S.C. 1030 (e).

228.   To date these crimes remain uncharged.

229.    After intercepting these communications, Kravitz became enraged after finding evidence on the Plaintiff's phone that she believed indicated that the Plaintiff was involved with other women.

230.    Kravitz then falsely asserted that the Plaintiff was engaging in harassing communication with other women on Instagram.

231.    CPLR 4506 prohibits information or materials gathered in violation of NY PL 250.05 from being used as any form of evidence or factual predicate in any hearing or proceeding in the State of New York.

232.    The foregoing information was obtained in violation of NY PL 250.05 and then used as a factual predicate against the Plaintiff to justify a subpoena that was sent to the Plaintiff's law school seeking information related to the possible existence of complaints made by female students against the Plaintiff.

233.    No such complaints existed and the subpoena was quashed.

234.    Not only have there never been any such complaints, but rather women previously involved with the Plaintiff have in fact had nothing but positive things to say about him Annexed Exhibit C.

235.    Regardless of whether it was an oversight in that the means in which Kravitz gained access to this information was not properly vetted, using this unlawfully obtained information as a predicate to send a subpoena to the Plaintiff's law school damaged and slandered him, and was a violation of his educational privacy.

236.    Rights to privacy have consistently been recognized by both federal law and by the pertinent states subject to diversity in this instant matter. Such claims exist to prevent the wrongful intrusion into one's private activities and to reinforce the right to live

without unwarranted interference into one's private life. See generally, Restatement
(Second) Torts § 652B. Nat'l Archives and Record Admin. v. Favish 541 U.S. 157
(2004). Parnoff v. Aquarion Water Co. of Conn. App. 153, (2019).

AS AND FOR THIRD COUNT AGAINST KRAVITZ
PRIMA FACIE TORT

237.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained
above as if fully set forth in detail herein.

238.    Kravitz intercepted messages and performed an illegal unauthorized search of the
Plaintiff's private cellular device. This was done in pre-meditated fashion and without
legitimate excuse or justification.

239.    As a result of this conduct, Plaintiff has incurred special damages.

240.    Based on the foregoing, Kravitz is liable to the Plaintiff for Prima Facie Tort.

AS AND FOR FOURTH COUNT AGAINST KRAVITZ
AIDING AND ABETTING EXTORTION

241.    Plaintiff hereby re-alleges and incorporates by reference Paragraphs 58-68 and
69-84 as if fully set forth in detail herein.

242.    Kravitz, by and through her attorney David Roche did engage in an effort to extort
money and concessions from the Plaintiff under the threat of criminal charges.

243.    Based on the foregoing, Kravitz is liable to the Plaintiff for Aiding and Abetting
extortion.

## AS AND FOR FIFTH COUNT AGAINST KRAVITZ
## AIDING AND ABETTING THE ABUSE OF A LAW LICENSE

244.   Plaintiff hereby re-alleges and incorporates by reference Paragraphs 58-68 as if fully set forth in detail herein.

245.   Kravitz did knowingly participate and grant substantial assistance to David Roche in violation of NYSBA Rule 3.4 (e)

246.   Based on the foregoing, Kravitz is liable to the Plaintiff for Aiding and Abetting the Abuse of a Law License.

## AS AND FOR SIXTH COUNT AGAINST KRAVITZ
## VIOLATION OF NEW YORK HUMAN RIGHTS STATUTES

247.   Plaintiff hereby re-alleges and incorporates by reference Paragraphs 123-134 and 148-156 as if fully set forth in detail herein.

248.   Based on the foregoing, Kravitz is liable to the Plaintiff under the aforementioned statutes.

## AS AND FOR SEVENTH COUNT AGAINST KRAVITZ
## ABUSE OF PROCESS

249.   Plaintiff hereby re-alleges and incorporates by reference Paragraphs 88-108 as if fully set forth in detail herein.

250.   Kravitz by and through her attorney David Roche did issue regular process in civil court for an improper purpose.

251.   The issuance of the aforementioned process was without excuse or justification and in service of a collateral objective.

252.   The issuance of process continued in a Family Court proceeding.

253.    On December 13, 2021, under the advisement and substantial assistance of Devin Horne, Kravitz filed a family offense petition against the Plaintiff seeking an ex parte Order of Protection under Article 8 of the Family Court Act.

254.    The substance of Kravitz's family offense petition contained the same or similar allegations that she had previously made in a police report. Seemingly frustrated that the police were not reacting quickly enough to these allegations, Kravitz turned to the Family Court as "low-hanging fruit" which could be weaponized against the Plaintiff.

255.    Kravitz has called the police on multiple boyfriends prior to her relationship with the Plaintiff and has sought related legal remedies against them.

256.    Notably, Kravitz electing to take the criminal route against the Plaintiff as the first form of redressibility prior to going to the Family Court is in and of itself a perversion of the legislative intent of Article 8 of the Family Court Act.

257.    The legislative intent behind Article 8 was to preserve the family, to provide a remedial remedy for certain crimes between family members or intimate partners and to facilitate reconciliation or conciliation. Eileen W. v. Mario A.. 169 Misc. 2d 484 (N.Y. Fam Ct. 1996) People v. Allen NY Slip Op 24440 (2004).

258.    The foregoing legislation was not meant to be used in a punitive manner against an alleged perpetrator.

259.    Kravitz first seeking the more punitive measure against the Plaintiff prior to going to the Family Court speaks volumes. That is that her motives had less to do with purportedly protecting herself than they did her desire to exact retribution against the Plaintiff.

260.    It is clear that orders of protection issued under Article 8 are meant to serve as a shield to protect legitimate victims. But if a Judge places this Order in the wrong hands, the opportunity for abuse is rampant, and this shield can readily become a sword used to inflict damage.

261.   Temporary orders of protection can be obtained easily, with Petitioners having to offer no proof of any wrongdoing on the part of Respondents and Judges normally automatically granting such Orders in service of an overabundance of caution.

262.    It is apparent that Kravitz has used a temporary order of protection issued under Article 8 as a sword rather than a shield. This is most evident in the events that occurred on February 11, 2022.

263.    With the Plaintiff lawfully in a public place, Kravitz falsely asserted that the Plaintiff had sent a drink to her when it was very clear that this drink was intended for Halverson.

264.   No such order of protection existed on February 11, 2022 on behalf of Halverson against the Plaintiff nor does any such order of protection exist to date.

265.    Kravitz later falsely asserted to a 911 operator that a dangerous dark-skinned Hispanic male was with the Plaintiff as a racist dog whistle to get the police's attention and ultimately the Plaintiff arrested.

266.    Based on the foregoing, Kravitz is liable to the Plaintiff for Abuse of Process.


### AS AND FOR EIGTH COUNT AGAINST KRAVITZ
### CONVERSION

267.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

268.   At all relevant times, Plaintiff had and continues to have a possessory right to his belongings and personal items.

269.   Kravitz exercised dominion over these items interfering with Plaintiff's use of them.

270.   Kravitz maintained over half the clothes the Plaintiff owned at her apartment as well as other items that she failed to return to him in a timely manner.

271.   Plaintiff respectfully noted that Kravitz had theses items, especially in light of the fact that he had important work and school commitments like final exams that necessitated their use at the time.

272.   Various individuals attempted to reach out to Kravitz to encourage the return of the Plaintiff's items including the Plaintiff's sister.

273.   Kravitz initially agreed to meet with the Plaintiff's sister to return the Plaintiff's items then inexplicably reneged on this commitment.

274.   The foregoing was a consistent pattern of behavior on the part of Kravitz occurring from December 1, 2021, to December 9, 2021 in which she would state that she was willing to return the Plaintiff's items but then not follow through and/or constantly change her mind about the manner and circumstances in which she would be willing to return them.

275.   This flakiness and lack of reliability led the Plaintiff and would lead any reasonable person for that matter not to believe Kravitz when she made subsequent varying statements about returning his clothes, including a passing comment about "mailing" them to him.

276.    While the Plaintiff has received some of his items back, he still has not received all of them.

277.    Kravitz through Roche has stated that she searched her apartment and could not find his remaining items. Given the course of conduct and aforementioned behavior, one would reasonably conclude these items have either been discarded or damaged.

278.    Based on the foregoing, Kravitz is liable to the Plaintiff for conversion.


### AS AND FOR NINTH COUNT AGAINST KRAVITZ
### VIOLATION OF 42 U.S.C. 1983: FOURTH AND FOURTEENTH AMENDMENTS

279.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

280.    Based on the foregoing, Kravitz is liable to the Plaintiff for a deprivation of Constitutional rights pursuant to 42 U.S.C. 1983.


### AS AND FOR TENTH COUNT AGAINST KRAVITZ
### CONSPIRACY

281.    Plaintiff hereby re-alleges and incorporates by reference all allegations contained above as if fully set forth in detail herein.

282.    Kravitz did engage in an agreement with one or more parties to act unlawfully and/or in a manner that was improper that damaged the Plaintiff.

283.    Based on the foregoing, Kravitz is liable to the Plaintiff for Civil Conspiracy.

<u>AS AND FOR FIRST COUNT AGAINST HORNE</u>
<u>AIDING AND ABETTING ABUSE OF PROCESS</u>

284.    Plaintiff hereby re-alleges and incorporates by reference Paragraphs 14-17 and 249-266 as if fully set forth in detail herein.

285.    On or about December 11, 2021 to December 13, 2021, while present in New York and acting under New York law, Horne granted substantial assistance to Kravitz in an abuse of Family Court Process.

286.    Based on the foregoing, Horne is liable to the Plaintiff for Aiding and Abetting the Abuse of Process.

<u>AS AND FOR SECOND COUNT AGAINST HORNE</u>
<u>CONSPIRACY</u>

287.    Plaintiff hereby re-alleges and incorporates by reference Paragraphs 14-17 and 249-266 as if fully set forth in detail herein.

288.    Horne did enter into an agreement with one or more parties to act unlawfully and/or in a manner that was improper that damaged the Plaintiff.

289.    Based on the foregoing, Horne is liable to the Plaintiff for Civil Conspiracy.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays for relief as follows,

That acts carried out by Defendants be declared unlawful and/or improper where appropriate.

A retraction of any and all incendiary and slanderous statements made by Defendants regardless of perfunctory disclaimers of information and belief, where Defendants lack the expertise or knowledge to form the proper foundation for such belief.

For compensatory and punitive damages, jointly and severally in an amount no less than $3,950,000 for all foregoing damages alleged including but not limited to pain and suffering, loss of enjoyment of life, and current and future prospective advantage.

Plaintiff further prays for compensation for the costs and disbursements of this action as well as any further relief this Court deems just and proper.


Dated:  New York, New York                    By: _____

                                                  Robert Bottone
November 28, 2022                                 515 West Ave, PH #43, Norwalk, CT
                                                  rbottone20@gmail.com
                                                  (203) 801-8246

# Affidavit of David Lundberg

State of New York
County of New York

**BEFORE ME**, the undersigned Notary Public, personally appeared David Lundberg, who makes the following statement and affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts, and things set forth are true and correct to the best of his or her knowledge:

I, David Lundberg, being of sound mind and body, swear and confirm as follows:

1.  I currently reside at 117 Gilman Street, Bridgeport, Connecticut, 06605.

2.  I am over the age of 18.

3.  On March 9, 2022, I was present for a conversation that occurred via speakerphone between Robert Bottone and a man who identified himself as "David Roche." The conversation occurred approximately in the early evening.

4.  The conversation started out with Mr. Bottone and Mr. Roche discussing the return of Mr. Bottone's personal items that Mr. Roche's client Alexandra Kravitz had failed to return.

5.  Later in the conversation, Mr. Roche stated that he was upset that Mr. Bottone had not been charged with any crimes, and that he strongly suggested to Mr. Bottone that he withdraw a case in civil court, withdraw his family offense petition against Ms. Kravitz, and pay for all of Ms. Kravitz's legal fees and that "if he didn't things would get much worse for him" regarding potential criminal charges.

6.  I distinctly recall Mr. Roche saying these words as I was taken back at how it sounded threatening. Additionally, Mr. Roche has an unmistakbly recognizable voice as I recall him having a very strange and distinct accent.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

_David Lundberg_____   Date: _8/11/22_

(Affiant's signature)

EXHIBIT A

# Notary Public

STATE OF NEW YORK
COUNTY OF NEW YORK

On this the ___11___ day of ___August___, 20 __22__, the foregoing instrument was sworn to (or affirmed) and subscribed before me by **David Lundberg**, known or proven to me to be the person whose name is subscribed to the within instrument.

WITNESS my hand and official seal.

_ETTA Renee BARMANN_

(Print Name)

_Etta Renee Barmann_ [Affix seal]

(Signature)

*NOTARY PUBLIC*

My Commission Expires: ___12/30/23.___

ETTA RENEE BARMANN
Notary Public, State of New York
ID Number: 01BA6402171
Qualified in New York County
Commission Expires Dec. 30, 2023

EXHIBIT   A

# AFFIDAVIT OF ANDREW LEVINSKY

State of New York
County of New York

**BEFORE ME,** the undersigned Notary Public, personally appeared Andrew Levinsky, who makes the following statement and affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts, and things set forth are true and correct to the best of his or her knowledge:

I, Andrew Levinsky, being of sound mind and body, swear and confirm as follows:

1.  I am over the age of 18.

2.  On December 4, 2021, I attended a birthday party at the Allswell restaurant located in Brooklyn, New York.

3.  While at this party, Alexandra Kravitz informed me that days earlier on December 1, 2021, she intercepted messages between Robert Bottone and another woman on Mr. Bottone's private cellular device without Mr. Bottone's permission after Mr. Bottone had fallen asleep.

4.  I then witnessed a conversation between Mr. Bottone and Ms. Kravitz that occurred outside the restaurant where I stood only a few feet from them. During this conversation, Ms. Kravitz gave Mr. Bottone no indication that they were broken up, stating that she would reach out to him to speak "in a few days."

5.  From approximately late January through early February 2022, I observed Alexandra Kravitz on multiple occasions following Mr. Bottone in and around public places including near his school in lower Manhattan.

6.  I had spent a great deal of time with Alexandra Kravitz prior to these dates, and therefore was and am sufficiently familiar with her appearance. I can positively confirm that she was the individual I observed following Mr. Bottone during this time period.

7.  I further observed how Ms. Kravitz's stalking had negative effects on Mr. Bottone's mental and emotional health.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date: 11/11/2022

EXHIBIT B

1

# NOTARY PUBLIC

State of New York
County of New York

On this the __11th__ day of __Nov__ , 20__22__, the foregoing instrument was sworn to
(or affirmed) and subscribed before me by **Andrew Levinsky**, known or proven to me to
be the person whose name is subscribed to the within instrument.

WITNESS my hand and official seal.

___ALAL UDDIN___
(Print Name)

_____ [Affix seal]
(Signature)

*Notary Public*

My Comission Expires: __01-02-2026__

ALAL UDDIN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01UD6369264
Qualified in Kings County
My Commission Expires 01-02-2026

EXHIBIT B

2

FAMILY COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

FILE #:     314305

---------------------------------------------------------------x

DOCKET#:  O-06343-21

ALEXANDRA KRAVITZ,

O-01049-22

               Petitioner, Respondent

  -against-

ROBERT BOTTONE,

               Petitioner, Respondent

---------------------------------------------------------------x

**To: The Honorable Jonathan H. Shim,**

    I, Alyssa Sollazzo being duly sworn and deposes do state under oath the following:

    I am a citizen of the State of New York working as a nurse assistant at Garnet Health Medical Center.

    I maintained an intimate relationship with Mr. Bottone, whom I and all his friends know as "Bobby" from May 2021 to mid-August 2021. During the course of our relationship, Mr. Bottone was always a gentleman and treated me with respect. He was compassionate and empathetic towards me. When our romantic relationship ended, it ended amicably and we remain on friendly terms to this day.

    I have never seen Mr. Bottone act with any ill intent or malice. He is a person of upstanding moral character who always acts with the best intentions. I continue to value his friendship to this day. I offer my strong affirmation of his character for your consideration in this legal proceeding.

Under penalty of perjury, I affirm that the contents thereof are true.

                                             _Alyssa Sollazzo_
                                             Affiant Signature

Sworn to me before this __23rd__ day of __May__ 20__22__

_____
Notary Public

                                    DOUGLAS STERNEMANN
                              NOTARY PUBLIC STATE OF NEW YORK
                                    ORANGE
                                  LIC. #01ST6313507
                                  COMM. EXP. 10/20/2022

EXHIBIT C