```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/28/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT BOTTONE,

                    Plaintiff,

        -against-

DAVID ROCHE, SIVIN, MILLER & ROCHE
LLP, ALEXIS EL SAYED, ART BAR, and
ERICA HALVERSON,

                    Defendants.

1:22-cv-10349 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO DISMISS
AGAINST CERTAIN ATTORNEY
DEFENDANTS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Robert Bottone ("Plaintiff"), proceeding *pro se*, brings this diversity action

asserting claims arising out of an altercation between Plaintiff and his former girlfriend, Alexandra

Kravitz ("Kravitz"), and subsequent events and litigation related to that altercation. Defendants

David Roche ("Roche") and Sivin, Miller & Roche LLP ("SMR") (together, the "SMR

Defendants") move to dismiss the claims against them for lack of subject matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief

can be granted pursuant to Rule 12(b)(6). [ECF Nos. 18–19]. For the following reasons, the

motion to dismiss by the SMR Defendants is GRANTED.

**BACKGROUND[1]**

Plaintiff is a resident of Connecticut and a law student in New York City. AC ¶¶ 1, 11.

From August to December 2021, Plaintiff and Kravitz were in a romantic relationship. AC ¶ 4.

On December 9, 2021, following the end of their relationship, Plaintiff and Kravitz engaged in a

physical altercation at Kravitz's apartment building, where Plaintiff had gone to collect his

---

[1] The Court draws its facts from the Amended Complaint [ECF No. 17 ("AC")], the well-pleaded factual allegations
of which are taken as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

belongings and to attempt to make amends with Kravitz.  AC ¶¶ 10–13.  Plaintiff and Kravitz exchanged incendiary and disparaging text messages following this incident.  AC ¶¶ 14–15. Plaintiff alleges that from late-January to mid-February 2022, Kravitz followed Plaintiff in public places.  AC ¶ 27.  In mid-February 2022, Plaintiff was ejected from a bar following an interaction with Kravitz and her companions.  AC ¶¶ 28–40.

In December 2021, Kravitz filed a criminal complaint and obtained an order of protection against Plaintiff from New York County Family Court.  AC ¶¶ 16–17.  In January 2022, Plaintiff filed a civil suit against Kravitz in New York state court.  AC ¶ 21.  In February 2022, Plaintiff obtained an order of protection against Kravitz in New York County Family Court.  AC ¶ 41. Kravitz retained SMR to represent her in the family court and civil proceedings.  AC ¶ 22.  Roche is a partner at SMR who handled Kravitz's representation.  AC ¶ 23.

In Plaintiff's civil case, Roche filed counterclaims against Bottone on Kravitz's behalf.  AC ¶ 42.  One of these counterclaims, for "harassment," was dismissed by the court.  AC ¶ 43.  In March 2022, a settlement conference was held in New York County Family Court, in which Plaintiff alleges that Roche acted "belligerently" and falsely asserted that Plaintiff's family offense petition was "frivolous."  AC ¶¶ 44–45.  Roche also moved to quash subpoenas Plaintiff had issued to Kravitz's acquaintances, and moved for a protective order "that would bar . . . Plaintiff from receiving any discovery."  AC ¶ 49.  These motions were withdrawn at the urging of the court. AC ¶ 50.

Also in March 2022, Plaintiff spoke to Roche on the phone.  Roche allegedly advised Plaintiff to withdraw his family court and civil cases and to pay for Kravitz's legal fees, otherwise "things would get much worse for . . . Plaintiff regarding potential criminal charges."  AC ¶ 51. In June 2022, following Plaintiff's rejection of settlement and his indictment on criminal charges, Plaintiff allegedly had another phone conversation with Roche in which Plaintiff stated that "you

guys wouldn't have had to push things regarding criminal charges" had Plaintiff earlier agreed to settle.  AC ¶¶ 54–56.  Plaintiff alleges that Roche responded:  "Yeah . . . right look we are where we are right now" and "I don't think digging your heels in on the civil case or the family court case, that that's advisable for you."  AC ¶ 56.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing his original complaint against nine Defendants, invoking the Court's diversity jurisdiction and raising thirty-five causes of action.  [ECF No. 1].  Plaintiff then voluntarily dismissed his claims against all Defendants except the SMR Defendants.  [ECF No. 7].  The SMR Defendants moved to dismiss Plaintiff's claims against them for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  [ECF Nos. 11–12].  Plaintiff opposed, and simultaneously moved for leave to file an amended complaint, which the Court granted.  [ECF Nos. 13–16].  Thereafter, Bottone filed the AC.[2]  [ECF No. 17].  The SMR Defendants again moved to dismiss the AC pursuant to Rules 12(b)(1) and (6) [ECF No. 19], and filed a memorandum of law in support [ECF No. 18 ("Mem.")].  Bottone did not oppose, and to date has taken no action to prosecute this case.

## LEGAL STANDARD

### I.   Rule 12(b)(1): Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a claim must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In considering a

---

[2] Although Plaintiff previously voluntarily dismissed Defendants Alexis El Sayed, Art Bar, and Erica Halverson [*see* ECF No. 7], the AC renames these Defendants.  AC 2.  Although a voluntary dismissal by a plaintiff pursuant to Federal Rule of Civil Procedure 41(a)(1) operates without prejudice, *see* Fed. R. Civ. P. 41(a)(1)(B), Plaintiff has not served the AC on these Defendants, and they have not appeared.  Plaintiff's ninety-day timeframe within which to serve these Defendants has now passed.  *See* Fed. R. Civ. P. 4(m).

Rule 12(b)(1) motion, the Court "must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). However, "[a] plaintiff must affirmatively demonstrate jurisdiction, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *City of Providence, Rhode Island v. Bats Glob. Markets, Inc.*, 878 F.3d 36, 44 (2d Cir. 2017) (internal quotation marks omitted).

In a case premised on the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the party invoking jurisdiction bears the burden of demonstrating that diversity jurisdiction is proper. *See Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994); *Kato v. Cnty. of Westchester*, 927 F. Supp. 714, 715 (S.D.N.Y. 1996). In addition to alleging diversity of citizenship, "the plaintiff must allege to a 'reasonable probability' that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount." *West v. City of New York*, No. 23-CV-2256 (LTS), 2023 WL 3728374, at *5 (S.D.N.Y. May 30, 2023) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)); *accord Tongkook*, 14 F.3d at 784. There is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999). "It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify a dismissal." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

## II.     Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the complaint contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In deciding an unopposed motion to dismiss, the Court "assume[s] the truth of a pleading's factual allegations and test[s] only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000) (citation omitted). In addition, the Court "read[s] the pleadings of a *pro se* plaintiff liberally and interpret[s] them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted).

## DISCUSSION

### I.  Subject Matter Jurisdiction

The SMR Defendants argue that the Court lacks subject matter jurisdiction because the AC does not demonstrate a reasonable probability that Plaintiff's damages, as a result of the SMR Defendants' alleged conduct, exceed $75,000. *See* Mem. 3–5.

The AC's *ad damnum* clause seeks damages in the amount of $3,950,000 "jointly and severally" against all Defendants. AC 27. A complaint's "*ad damnum* clause is presumed to be a good faith representation of the actual amount in controversy, which presumption can only be rebutted by showing to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Torres v. Sears Holdings Corp.*, No. 11 CIV.3394 RMB, 2011 WL 3462775, at *2 (S.D.N.Y. Aug. 5, 2011) (internal quotation marks omitted). The SMR Defendants argue that the AC's *ad damnum* clause

should be disregarded because it "is the same amount of compensatory damages sought by Plaintiff in his initial Complaint against all nine defendants collectively, including for various claims completely unrelated to the alleged actions of the" SMR Defendants.  Mem. 5.  According to the SMR Defendants, the AC's allegations of monetary damages against them, specifically, are limited to the allegation that the SMR Defendants' conduct caused Plaintiff over $2,000 in lost income. *See* Mem. 4 (citing AC ¶¶ 86, 107).

The Court acknowledges that Defendants other than the SMR Defendants initially were dismissed voluntarily from this action [*see* ECF No. 7], and although named again as Defendants in the AC, have not been served.  However, the SMR Defendants have not shown "to a legal certainty," *St. Paul Mercury Indem. Co.*, 303 U.S. at 289, that Plaintiff could not recover damages against the SMR Defendants in excess of the jurisdictional requisite.  First, Plaintiff raises five separate causes of action against the SMR Defendants in the AC, yet the allegations of damages to which the SMR Defendants point concern only two of those claims.  *See* AC ¶¶ 85–122.  Even as to those claims, Plaintiff alleges that his damages "include but are not limited to" lost income, AC ¶ 107, and references additional, unspecified damages for interference with his "future career prospective advantage."  AC ¶ 86; *see* AC ¶ 107.  In addition, the AC's *ad damnum* clause requests not only compensatory damages, but also punitive damages.  AC 27.  "[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied."  *A.F.A. Tours*, 937 F.2d at 87.  Under New York law, punitive damages are permitted for at least several of Plaintiff's claims against the SMR Defendants.  *See, e.g.*, *Johnson v. Home Savers Consulting Corp.*, No. 04CV5427(NG)(KAM), 2007 WL 925518, at *9 (E.D.N.Y. Mar. 23, 2007) (civil conspiracy), *report and recommendation adopted*, No. 04-CV-5427 NG KAM, 2007 WL 1110612 (E.D.N.Y. Apr. 11, 2007); *Bowens v.*

*Mel S. Harris & Assocs., LLC*, No. 07-CV-459S, 2008 WL 619162, at *2 (W.D.N.Y. Mar. 3, 2008) (abuse of process).

Accordingly, the Court finds that Plaintiff adequately alleges in the AC that the amount in controversy against the SMR Defendants exceeds $75,000, and thus that Plaintiff has properly invoked the diversity jurisdiction of this Court as to the SMR Defendants.

## II.    Failure to State a Claim

Plaintiff asserts five claims against the SMR Defendants: conspiracy, abuse of process, *prima facie* tort, violation of Judiciary Law Section 487, and negligent training, hiring, and retention.  AC ¶¶ 85–122.  The SMR Defendants move to dismiss each of these claims for failure to state a claim upon which relief can be granted.  *See* Mem. 5–10.  Applying the liberal construction afforded *pro se* pleadings and interpreting the AC to raise the strongest arguments it suggests, the Court finds that Plaintiff has not adequately pleaded any of his claims against the SMR Defendants.

### A.  Conspiracy

To state a claim for civil conspiracy under New York law, Plaintiff "must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and, (4) resulting damage or injury." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009).  "Under New York law, a claim for civil conspiracy may stand only if it is connected to a separate underlying tort." *Id.*; *see Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 102 (1986) ("a mere conspiracy to commit a tort is never of itself a cause of action" (cleaned up)).

Liberally construed, the AC alleges that the SMR Defendants conspired with Defendant Erica Halverson to commit the underlying tort of abuse of process.  AC ¶ 86.  Under New York

law, "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with *an otherwise actionable tort*."  *Alexander*, 68 N.Y.2d at 969 (emphasis added).  Plaintiff's conspiracy claim fails because, as further explained in the following section, Plaintiff has not "demonstrate[d] the underlying tort" of abuse of process.  *Meisel*, 651 F. Supp. 2d at 119.  By extension, Plaintiff has not adequately pleaded that Halverson aided and abetted the SMR Defendants' alleged abuse of process.  *See* AC ¶¶ 157–65.  "A claim of conspiracy cannot stand alone and must be dismissed if the underlying independent tort has not been adequately pleaded." *Filler v. Hanvit Bank*, 156 F. App'x 413, 418 (2d Cir. 2005) (internal quotation marks omitted).

Accordingly, the Court dismisses Plaintiff's claim for conspiracy against the SMR Defendants.

B.  Abuse of Process

To state an abuse of process claim under New York law, Plaintiff must plead that the SMR Defendants "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Plaintiff alleges that the SMR Defendants abused process by filing motions to prevent Plaintiff from accessing discovery, including motions to quash subpoenas issued to non-parties and a motion for a protective order, and by filing a counterclaim for harassment.  AC ¶¶ 90–92, 95–98, 100.

Plaintiff's abuse of process claim fails at the first element because the SMR Defendants' conduct that Plaintiff alleges in support of the claim—the filing of motions and a counterclaim in the underlying lawsuits—is not legal process.  *See Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514–15 (2d Cir. 2020) ("Plaintiffs cannot successfully rest their abuse-of-process

claim on Defendants' use of appeals, objections, and motions to prosecute their civil lawsuits against Plaintiffs."); *see also PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 839 F.2d 42, 43 (2d Cir. 1988) (finding "no abuse of process claim where the only process employed by the defendant was the filing of an answer and counterclaim"). Such "court filings do not qualify as legal process because these mechanisms do not require Plaintiff[] to perform or refrain from the doing of some prescribed act and are no more encumbering of Plaintiff['s] person[] or property than a civil summons and complaint," which the New York Court of Appeals has long held "is not legally considered process capable of being abused." *Manhattan Enter. Grp.*, 816 F. App'x at 514–15 (internal quotation marks omitted) (quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 469 N.E.2d 1324, 1326 (1984)). Indeed, Plaintiff's allegation that the civil and family courts rejected each of the SMR Defendants' cited filings, AC ¶¶ 94, 99, 105, supports dismissal of Plaintiff's abuse of process claim because "[p]rocess is a direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act." *Williams v. Williams*, 23 N.Y.2d 592, 596, 246 N.E.2d 333, 335 (1969) (internal quotation marks omitted). Because, as alleged, none of the SMR Defendants' filings or motions were allowed or granted, Plaintiff was not required to do or to refrain from doing anything.

Moreover, even if the Court were to consider any of the SMR Defendants' alleged actions to be legal process, *see Manhattan Enter. Grp.*, 816 F. App'x at 515 (noting that using "subpoenas[] and other tools of the discovery process to harass Plaintiffs . . . *might* form the basis of an action for abuse of process" (emphasis added)), Plaintiff's claim fails because he has not alleged that the SMR Defendants engaged in the specified conduct "to obtain a collateral objective that is outside the legitimate ends of the process," *Cook*, 41 F.3d at 80. "The crux of a malicious abuse of process claim is the collateral objective element. To meet this element, a plaintiff must prove not that defendant acted with an improper motive, but rather an improper purpose." *Kraft*

*v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011); *see also Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013) ("malicious motive . . . is [not] a sufficient collateral objective"). A collateral objective is a purpose "beyond or in addition to the purposes of the litigation." *BBF Partners LLC v. Mon Ethos Pro Consulting LLC*, No. 20-CV-5544 (RPK) (MMH), 2022 WL 612974, at *4 (E.D.N.Y. Mar. 2, 2022) (internal quotation marks omitted).

Plaintiff alleges that the SMR Defendants' collateral objective was to "obstruct[] the discovery process and prejudic[e] the Plaintiff." AC ¶ 95. This is not a collateral objective, but rather a direct objective. Attempting to limit an adversary's access to discovery "is part of the regular course of civil litigation." *BBF Partners*, 2022 WL 612974, at *4. There is no allegation in the AC that these routine litigation tactics were engaged in by the SMR Defendants to produce "an effect outside the intended scope of operation of the process employed," *i.e.*, to limit Plaintiff's discovery and to prosecute Kravitz's cases. *Jones v. Maples/Trump*, No. 98 CIV. 7132 (SHS), 2002 WL 287752, at *7 (S.D.N.Y. Feb. 26, 2002), *aff'd sub nom. Jones v. Trump*, 71 F. App'x 873 (2d Cir. 2003). "Such conduct is part of the litigation process; it is not tortious." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 107 (S.D.N.Y. 2020); *see also Rosefielde v. Wolk*, No. 95 CIV. 2531 (LMM), 1995 WL 431318, at *4 (S.D.N.Y. July 21, 1995) ("A viable claim for abuse of process requires abusive advocacy, rather than zealous advocacy."). The fact that the SMR Defendants' counterclaim was dismissed or that the SMR Defendants were "forced" to withdraw certain motions, *see* AC ¶¶ 94, 99, 105, at most permits an inference that the SMR Defendants' legal positions lacked merit, not that they were motivated by a collateral objective. *See Perry v.*

*McMahan*, 164 A.D.3d 1486, 1488, 84 N.Y.S.3d 510, 513 (2d Dep't 2018) ("Frivolous litigation . . . is not a sufficient basis for a cause of action sounding in abuse of process.").

Accordingly, the Court dismisses Plaintiff's claim for abuse of process against the SMR Defendants.

## C. *Prima Facie* Tort

To state a claim for *prima facie* tort, Plaintiff must allege "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002). As to the third element, the "touchstone" of a *prima facie* tort claim "is disinterested malevolence, meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Lab'ys, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir. 1990) (internal quotation marks omitted); *see also Durham Indus., Inc. v. N. River Ins. Co.*, 673 F.2d 37, 40 (2d Cir. 1982) ("New York courts have emphasized repeatedly that malice is an essential element of prima facie tort and that a claim of prima facie tort does not lie where the defendant has any motive other than a desire to injure the plaintiff."). "Prima facie tort is a disfavored claim under New York law." *Hall*, 185 F. Supp. 2d at 304.

Plaintiff alleges in support of his *prima facie* tort claim that the SMR Defendants "engaged in an extortion effort that caused . . . Plaintiff to incur special damages," and that this conduct was "without legitimate excuse or justification, and undertaken with the sole motive to injure . . . Plaintiff." AC ¶¶ 110–111; *see* AC Ex. A (describing the "extortion effort"). Plaintiff's *prima facie* tort claim fails because he does not adequately plead that the SMR Defendants' alleged conduct was "done with the sole intent to harm." *Twin Lab'ys*, 900 F.2d at 571. The AC itself contains only a conclusory recital of this element, without any factual allegation, and as such does not suffice to plead the claim. *Ashcroft*, 556 U.S. at 678; *see* AC ¶ 111. Even if the Court were to

look beyond the pleadings and consider the details of the purported "extortion effort" contained in the affidavit attached to the AC, there are plainly other possible motives for the SMR Defendants' alleged conduct, namely, as the affidavit states, to induce Plaintiff to "withdraw a case in civil court, withdraw his family offense petition against Ms. Kravitz, and pay for all of Ms. Kravitz's legal fees." AC Ex. A ¶ 5; *see Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) ("When there are other motives, such as profit, self-interest, or business advantage, there is no recovery under the doctrine of *prima facie* tort."); *accord Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009) (affirming dismissal of *prima facie* tort claim where plaintiff pleaded that defendant's initiation of civil action was done "to coerce her into abandoning her claim to . . . disputed fees").

Accordingly, the Court dismisses Plaintiff's claim for *prima facie* tort against the SMR Defendants.

### D.  Violation of Judiciary Law Section 487

New York Judiciary Law Section 487 makes liable for treble damages in a civil action any attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. Judiciary Law § 487. To state a claim under Section 487, Plaintiff must allege his claim with particularity and "must show, at a bare minimum, that defendants: (1) are guilty of deceit or collusion, or consent to any deceit or collusion; and (2) had an intent to deceive the court or any party." *Ray v. Watnick*, 182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016) (internal quotation marks omitted), *as amended* (May 4, 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017). "[A]llegations regarding an intent to deceive must be stated *with particularity*." *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 116 (E.D.N.Y. 2020) (emphasis added) (citing *Jean v. Chinitz*, 163 A.D.3d 497, 497, 83 N.Y.S.3d 55, 58 (1st Dep't 2018)); *see also Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 615, 23 N.Y.S.3d 173, 178 (1st Dep't

2015).  Courts in this District, relying on decisions of New York's Appellate Division interpreting Section 487, have imposed two additional requirements beyond the statutory text: "first, that the deceit is 'extreme' or 'egregious,' and second, that, if the [Section 487] claim is brought in a lawsuit separate from the one in which the deceit allegedly occurred, the deceit be 'merely a means to the accomplishment of a larger fraudulent scheme.'"[3]  *Makhnevich v. MTGLQ Invs., L.P.*, No. 19 CIV. 72 (AT) (SN), 2021 WL 3406484, at *9 (S.D.N.Y. Aug. 4, 2021) (citation omitted) (quoting *Bryant v. Silverman*, 284 F. Supp. 3d 458, 472 (S.D.N.Y. 2018) and *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 710 (S.D.N.Y. 2019)).  Finally, Plaintiff must plead "that damages were caused by the deceit" to sustain such a claim.  *Michelo*, 419 F. Supp. 3d at 710 (internal quotation marks omitted).

Plaintiff alleges that the SMR Defendants are liable under Section 487 because they "engaged in a pattern of serious legal delinquency based around deception and collusion."  AC ¶ 114.  Plaintiff points to the SMR Defendants' allegedly "leveling a threat of criminal charges in an attempt to procure money from . . . Plaintiff, intentionally issuing a counter-claim for 'harassment' knowing such a cause of action did not exist in the State of New York," and "intentionally engaging in an agreement with Defendant Halverson in which she was to offer gratuitous testimony."  AC ¶ 114.

Plaintiff's Section 487 claim fails for numerous reasons.  As an initial matter, the Court is not persuaded that any of Plaintiff's allegations of the SMR Defendants' conduct involve deceit or

---

[3] The Second Circuit has noted that "some courts in New York have imposed an additional prerequisite to recovery: that the plaintiff in a section 487 action show 'a chronic and extreme pattern' of legal delinquency by the defendant." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008).  However, as the Second Circuit itself acknowledged, that requirement, too, "appears nowhere in the text of the statute, . . . and other [New York] courts have found attorneys liable under the statute for a single intentionally deceitful or collusive act." *Id.*  The New York Court of Appeals has not ruled whether the defendant's relevant deceit must be chronic, extreme, and/or egregious. *Lewis v. Legal Servicing, LLC*, No. 19-CV-8085 (PAE) (OTW), 2022 WL 2531817, at *8 n.13 (S.D.N.Y. Mar. 15, 2022), *report and recommendation adopted sub nom. Lewis v. Steward*, No. 19 CIV. 8085 (PAE), 2022 WL 4592641 (S.D.N.Y. Sept. 30, 2022).

collusion.  Rather, the alleged actions are consistent with common (though perhaps sharp-elbowed) tactics in adversarial litigation.  Section 487's "rigorous standard affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy," and "an action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings would not be sufficient to make out a violation of § 487."  *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008).  Moreover, it is fatal to Plaintiff's claim that Plaintiff does not plead anywhere in the AC—much less with the requisite particularity—that the SMR Defendants acted with the *intent* to deceive the court or any party to the underlying litigations.  *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP*, 629 F. Supp. 2d 259, 265–66 (S.D.N.Y. 2007), *aff'd*, 351 F. App'x 472 (2d Cir. 2009).

Additionally, Plaintiff did not bring his Section 487 claims within the actions in which they allegedly arose (the state family court and civil proceedings).  However, Plaintiff has not pleaded that he was unaware of the SMR Defendants' alleged Section 487 violations at the time that they occurred, or that the alleged deceit "was merely a means to the accomplishment of a larger fraudulent scheme" as required to invoke the exception to the rule that a Section 487 claim premised on an attorneys' misconduct be brought in the lawsuit in which the misconduct allegedly occurred.  *Michelo*, 419 F. Supp. 3d at 710 (internal quotation marks omitted); *see Heriveaux v. Lopez-Reyes*, 779 F. App'x 758, 760 (2d Cir. 2019) (noting that "New York law requires a section 487 claim against an attorney be brought in the action in which the fraud occurred" and affirming dismissal where the plaintiff "alleged only fraudulent acts that took place in the underlying litigation," because "the exception therefore does not apply"); *Max v. Lissner*, No. 22-CV-5070 (VEC), 2023 WL 2346365, at *11 (S.D.N.Y. Mar. 3, 2023) ("[A] plaintiff cannot bring a claim pursuant to § 487 predicated on statements made in a prior proceeding if the plaintiff was aware that a lawyer was violating § 487 at the time the violation occurred; in such a case, the victim's

exclusive remedy is to bring an action in the course of that same proceeding." (cleaned up)), *appeal dismissed* (June 21, 2023).  Finally, Plaintiff does not plead that he was damaged in any way by the alleged deceit.  *See Michelo*, 419 F. Supp. 3d at 710.

Accordingly, the Court dismisses Plaintiff's claim for violation of Section 487 against the SMR Defendants.

E.  Negligent Training, Hiring, and Retention

Plaintiff alleges that SMR "failed to give Roche proper training" and "failed to adequately train Roche in how to conduct legal research," citing various instances of Roche's allegedly deficient performance in the course of the underlying litigations.  AC ¶¶ 117, 119–121.  "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations and internal quotation marks omitted).

Plaintiff's claim fails at the first element because Plaintiff has not adequately alleged that Roche was a tortfeasor.  *See id.*  "Lacking a predicate tort, Plaintiff cannot proceed with the derivative claim of negligent hiring and retention." *Zeak v. United States*, No. 11 CIV. 4253 KPF, 2015 WL 246340, at *3 (S.D.N.Y. Jan. 20, 2015).  Here, because, as particularized above, "all of Plaintiff's underlying [tort] claims have been dismissed, [he] cannot sustain this type of derivative

claim." *Pinto v. City of New York*, No. 15-CV-9696 (CM), 2017 WL 5508917, at *6 (S.D.N.Y.

Mar. 2, 2017), *aff'd*, 728 F. App'x 26 (2d Cir. 2018).

Accordingly, the Court dismisses Plaintiff's claim for negligent training, hiring, and

supervision against the SMR Defendants.

## **CONCLUSION**

For the foregoing reasons, the SMR Defendants' motion to dismiss is GRANTED.  The

AC is dismissed as against the SMR Defendants with prejudice.  Although courts are instructed to

"freely give leave [to amend] when justice so requires," Fed. R. Civ. P 15(a)(2), justice does not

so require here.  The Court already permitted Plaintiff to amend his complaint after Plaintiff was

put on notice, through the SMR Defendants' pre-motion letter, of the alleged deficiencies in his

claims against them.  *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (leave to

amend properly may be denied for reasons including "undue delay" and "repeated failure to cure

deficiencies by amendments previously allowed" (internal quotation marks omitted)).

Accordingly, Plaintiff is DENIED leave to amend as against the SMR Defendants.

The Court notes that Plaintiff has failed to serve any of the non-SMR Defendants against

whom Plaintiff voluntarily dismissed the claims in his initial complaint, but whom he names again

in the AC.  Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served

within 90 days after the complaint is filed, the court—on motion or on its own after notice to the

plaintiff—must dismiss the action without prejudice against that defendant or order that service be

made within a specified time."  Fed. R. Civ. P. 4(m).  The AC was filed on April 21, 2023, and

ninety days have now passed.  Accordingly, Plaintiff is DIRECTED to serve Defendants Alexis

El Sayed, Art Bar, and Erica Halverson with the AC and to file proof of such service on the docket

on or before March 29, 2024.  If service has not been made on or before that date, and if Plaintiff

fails to show cause, in writing, why service has not been made, the AC will be dismissed as against

16

those Defendants—and in effect, in its entirety—for failure to prosecute pursuant to Rules 4 and 41 of the Federal Rules of Civil Procedure.   Alternatively, if Plaintiff, having previously voluntarily dismissed his claims against the non-SMR Defendants, does not intend to pursue his claims against those Defendants, Plaintiff shall re-file a notice of voluntary dismissal.

The Clerk of Court is respectfully requested to terminate the motions pending at docket entries 18 and 19.  The Clerk of Court is further requested to mail a copy of this Opinion and Order to the *pro se* Plaintiff at the address of record.

**SO ORDERED.**

**Date:  February 28, 2024**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**